**IN THE**
**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA**          :

          **v.**                            :          **Criminal No. 22-00071-ABJ-1**

**SAMUEL LAZAR**                        :

**DEFENDANT'S MOTION FOR RECONSIDERATION**
**OF**
**PRETRIAL DETENTION ORDER**

Defendant Samuel Lazar, by and through undersigned counsel, respectfully submits this

Motion for Reconsideration of Pretrial Detention of October 18, 2021.

Mr. Lazar has been in custody since his arrest on July 21, 2021 for conduct that occurred

at the United States Capitol on January 6, 2021.  As will be more fully explained below,

circumstances have significantly changed, and, therefore, the defendant respectfully requests

that this Honorable Court reconsider the detention issue.

**BACKGROUND**

Mr. Lazar is before this Court charged by Superseding Indictment with 1) Assaulting,

Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C.

§ 111(a)(1) and (b); 2) Civil Disorder, in violation of 18 U.S.C § 231(a)(3); 3) Entering and

Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in

1

violation of 18 U.S.C. 1752(a)(1) and (b)(1)(A); 4) Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(4) and (b)(1)(A); and 5) Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F).  *See* ECF 50, Case 1:21-cr-00525-ABJ.

On July 21, 2021, Mr. Lazar was arrested in this matter and held without bond at the Federal Detention Center ("FDC") Philadelphia.  On August 31, 2021, Magistrate Judge Robin Merriweather ordered Mr. Lazar held without bond pending trial.

On September 24, 2021, Mr. Lazar filed a Motion for Reconsideration of Magistrate Judge Merriweather's Order.   *See* ECF 27, Case 1:21-cr-00525-ABJ.   The government filed an opposition on October 1, 2021. *See* ECF 30.  On October 8, 2021, Mr. Lazar filed a Reply to the government's opposition. *See* ECF 31, Case 1:21-cr-00525-ABJ.  Following hearings held on October 12 and 18, 2021, this Honorable Court denied the defendant's Motion for Reconsideration, by Order dated October 18, 2021.  *See ECF* 40, Case 1:21-cr-00525-ABJ.

████████████████████████████████████████████████████

████████   Pursuant to a Plea Agreement,[1] Mr. Lazar plead guilty to a one count Information (sealed) alleging a violation of 18 U.S.C. §111(a) and (b), assaulting, resisting or impeding certain officers using a dangerous weapon.   *See* Case No. 22-cr-00071.  Sentencing was originally scheduled for June 16, 2022, but was continued to August 12, 2022, ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[1] Pursuant to the Plea Agreement, the government will move to dismiss the Superseding Indictment in Crim. No. 1:21-cr-00525 at the time of sentencing.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████

However, ████████████████████████████████

████████████████████████████████ it is respectfully

requested that the issue of Mr. Lazar's detention pending sentencing be reconsidered.  The

defense submits that given the nature and circumstances of his offense, the fact that Mr.

Lazar has already spent one year in prison, under harsh COVID restrictions, ██████████

████████████████████████████████ it should be this Honorable Court's decision,

at sentencing, as to whether any additional incarceration is appropriate following the

Court's consideration of all of the relevant sentencing factors. ██████████████████

████████████████████████████████████████

████ In fairness, the defense respectfully requests that Mr. Lazar be released pretrial with

conditions of supervision that will ensure the interests of all parties and will allow this

_____

██████████████████████████████████████████

████████████████████

court to be the final arbiter of the appropriate sentence.

## **DISCUSSION**

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., a judicial officer "shall order" a defendant's detention before trial if, after a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). However, in our society, liberty is the norm, and detention prior to trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

Pursuant to 18 U.S.C. §3143(a)(2)(B), the judicial officer shall order that a person who has been found guilty of an offense described in §3142(f)(1) be detained unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.  The judicial officer considering the propriety of pretrial detention must also consider four factors: (1) [t]he nature and circumstances of the offense charged; (2) the weight of evidence against the person; (3) the history and characteristics of the person, including . . . the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; . . . and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

### A.      **The Evidence Proves That Mr. Lazar Is Not Likely to Flee**

Mr. Lazar would never consider flight.  He has already demonstrated sincere and deep

remorse ████████████████████████████████████████████████████████

████████████████████████████████████████████  ████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████

Mr. Lazar is a thirty-six (36) year old man who has been gainfully employed throughout

his adult life.  He is in a committed relationship with his partner, Autumn Hickey, with whom

he resides in Ephrata.  Pennsylvania.[3]  He is the father of two children, Sophia (age 14) and

Christopher (age 12).  It has been one year since he has seen his children.  He is an extremely

devoted father and not only has this separation been devastating to him, but he would never flee

because of his extraordinary commitment to his children.  He is also an engaged and well-liked

member of his community in Pennsylvania.  His family is an extremely close one.  *See* 15

Letters (previously submitted), ECF 12 Case 1:21-cr-00525-ABJ.   He communicates regularly

with his siblings and parents, who, similarly, are in contact with the undersigned on a regular

basis. Thus, it is clear, that Mr. Lazar has strong ties to the community, both through family

and friendship.

Since the inception of this matter, Mr. Lazar retained counsel in order to answer to these

charges, not flee from them.  His behavior and demeanor since then has been responsive and

cooperative.

Thus, it is clear that Mr. Lazar's strong ties to his family and community, his stable

---

[3] Ms. Hickey had previously been screened and approved by Pretrial Services as a third-party custodian for Mr. Lazar.

living environment and employment ████████████████████████████████

represent clear and convincing evidence that he is not a risk of flight.  Certainly, there are

conditions such as GPS monitoring and strict supervision that will ensure that he appears in

court for his sentencing.  As such, continued detention based on flight risk is not required.


    **B.**    <u>The Evidence Proves That Mr. Lazar Does Not Present A Danger To Any Other Person or The Community</u>


      "To justify detention…[based on] dangerousness, the government must prove by 'clear

and convincing evidence' that 'no condition or combination of conditions will reasonably assure

the safety of any other person in the community." *United States v. Munchel*, 991 F.3d 1273,

1279-80 (D.C. Cir. 2021)(citations omitted); see also 18 U.S.C. § 3142(f). There are four factors

the Court considers when deciding whether to detain based on dangerousness to the community.

They are "(1) the nature and circumstances of the offense charged…;(2) the weight of the

evidence against the person; (3) the history and characteristics of the person…;(4) the nature and

seriousness of the danger to any person or the community that would be posed by the person's

release." 18 U.S.C. § 3142 (g).

      These factors must be weighed against the idea that liberty is still the norm.

A review of all of these factors proves by clear and convincing evidence that Mr. Lazar

does not pose a threat to society or public safety.


    **1.**    <u>The Nature and Circumstances of the Offense Charged</u>.

      Mr. Lazar's charge stems from his activities during the January 6th protests on the

Capitol.  It is undisputed that Mr. Lazar was neither a leader or organizer or had any authority

role during that day.  He arrived with his sister and a friend hers and carried no weapons or other items or devices capable of causing injury to another.  Unlike others, he never attempted to go inside the Capitol.  At all times, Mr. Lazar stayed outside and eventually left after the breach of the Capitol.

Mr. Lazar went to the Capitol on January 6th for the purpose of peaceful protest, with no prior planning for any other purpose.  He is not a member of any of the organized groups that planned for a riot and attack on the Capitol on January 6, 2021.  Because he had been to prior Trump rallies where protesters used pepper spray and dangerous objects to cause harm to the participants, he wore a camouflaged vest, ski googles and carried a bullhorn.[4]  The vest is at best a defensive mechanism intending to prevent harm to Mr. Lazar.  It cannot cause harm to anyone else.  There is no dispute as to the fact that Mr. Lazar had no weapons such as a gun or a knife on him while he was present on the grounds. It is also undisputed that Mr. Lazar did not bring a canister of lachrymatory agent to the Capitol.  The one he deployed later on had been found by him on the ground and he picked it up while the officers were spraying pepper spray in the direction of the crowd.

While Mr. Lazar is charged with the serious offense of assault on law enforcement with a deadly weapon, his actions did not result in any injury to any law enforcement officers.  The government in its Statement of the Offense, ¶10, acknowledges that Mr. Lazar intentionally discharged one spray of lachrymatory agent causing "an officer to momentarily lose the ability to see."  The officer wiped his eye and continued his duties.  Mr. Lazar never attempted to enter the Capitol, nor did he physically touch any officers.  In fact, later on in the day, after this incident, when the line fell and the crowd forced entry into the Capitol, by breaking windows

---

[4] He had carried this bullhorn to Trump rallies in the past to participate and to play Christian music.

and assaulting members of law enforcement, shortly after 2:00 p.m., the defendant did not

participate in any way.

    **2.**    <u>**The Weight of the Evidence**</u>

    Mr. Lazar pled guilty to an assault upon a law enforcement officer.  In the *Statement of*

*the Offense* (filed under seal in Case. No. 22-00071), the government identifies his actions as

follows:

9.      Earlier this day, at approximately 1:00 p.m., a crowd of violent rioters assembled on the West Plaza of the U.S. Capitol.  U.S. Capitol Police formed a line of bike racks extending from the north end of the West Plasa to the south end to act as a barrier against the crowd.  Officers were standing watch behind this line and fending off repeated attempts by the rioters to pull on the bike racks either with their hands or with ropes and straps.  Lazar approached the line of U.S. Capitol Police and D.C. Metro Police and aimed the canister of lachrymatory agent at them but did not discharge it.

10.    At approximately 1:13 p.m., Lazar walked along the police line, grabbed the bike rack and pulled it with his left hand in an attempt remove it, while unintentionally discharging the lachrymatory agent from the canister in his right hand.  Police told Lazar to "get back" and they deployed a lachrymatory agent causing Lazar to retreat down the steps.  Lazar then turned to face D.C. Metro Police Officer M.C. and intentionally redeployed his lachrymatory agent toward Officer M.C. and U.S. Capitol Police Officer S.L. a second time, causing officer to momentarily lose the ability to see.

11.    When Lazar sprayed a lachrymatory agent at Officers M.C. and S. L., he knew that the officers were engaged in the performance of official duties.

12.    At approximately 1:41., Lazar again approached the line of police officers on the West Plaza with his bullhorn and displayed his middle finger to them.  Them, he yelled "forward!" to the hundred of other rioters while signaling them to charge the police.  Lazar then yelled to police through his bullhorn, "Stand the fuck down, LEO's.  Stand the fuck down" while also telling them to "get the fuck our of the way, tyrants!"  Lazar offered for the police to "join" him and when none did, he declared to the police, "you now have

fucking enemies on both sides!"  Lazar again took out his canister of lachrymatory agent and held it.

13.    At another point on January 6, Lazar yelled through his bullhorn, "Let's get their guns!  Let's get their guns!" encouraging others to forcefully take law enforcement's weapons form them.

While there is no doubt as to the seriousness of his words and actions, a review of the video footage demonstrates that (1) when he discharged the lachrymatory agent, he was at a distance of at least 10-15 feet from the officer: and (2) when he uttered those words, the crowd was at the bottom of the steps, not at the bike racks where the officers were (top of steps); they were simply mulling around when the words were uttered.  As such, his words had no effect as no one listened to him. He did not participate, in any way, later on in the day when the rioters broke through the police lines and stormed the Capitol.

3.    **History and Characteristics of Mr. Lazar**

Mr. Lazar is thirty-six (36) years old and lives with his partner in Ephrata, Pennsylvania.  He is a very devoted father, son and brother, a hardworking family man with strong ties to the community.  He is highly self-motivated and supports himself through a variety of business endeavors, including buying and reselling restaurant equipment and antiques, "flipping" real estate properties, and e-commerce.  Mr. Lazar also has training as a carpenter and takes on home improvement jobs to support himself and help others in his community.  Mr. Lazar's criminal record is minimal - he had two misdemeanor convictions nearly twenty (20) years ago, and a misdemeanor conviction from 2016.  *See Presentence Investigation Report*, ¶¶54-57.

Since July 21, 2021, while in prison, Mr. Lazar has had a perfect record, with absolutely no disciplinary infractions.  He has also mentored other inmates, through his faith and positive attitude.  ████████████████████████████████

████████████████████████████████████████████████████████████

Indeed, Mr. Lazar's history reflects patriotism, love of country and respect for law enforcement.  His letter to this Court demonstrates the sincerity of his feelings.  *See* Exhibit "A."  He acknowledges that his actions on January 6th were incredibly wrong and he has shown both through his words and his actions that he regrets them and seeks to redress his wrongs.

### 4.   <u>Nature and Seriousness of Danger to the Community</u>

The Court must also consider whether the defendant has proven by "clear and convincing evidence" that he does not "present an identified and articulable threat to an individual or the community

In *United States v. Munchel*, 991 F. 3d 1273, 1282-84,  (D.C. Cir. 2021), D.C. Circuit held that merely showing the danger a person posed to others or the community, or even our democratic institutions, on January 6 is not enough to justify pretrial detention now.   In granting pretrial release, Judge Powell in *United States v. Grady*, 541 F. Supp. 102, 115 (D.D.C. 2021), held:

> The same considerations that inform analysis of the nature and circumstances of the charged offenses are probative of dangerousness but, in addition, the court must find, by clear and convincing evidence, that the defendant "presents an identified and articulable threat to an individual or the community," *Munchel*, 991 F.3d at 1282 (quoting *Salerno*, 481 U.S. at 751), which threat must be "considered in context" regarding "the nature of the threat identified and the resources and capabilities of the defendant," *id.* at 1283.  The D.C. Circuit has indicated that merely showing the danger a person posed to others or the community, or even our democratic institutions, on January 6 is not enough to justify pretrial detention but, now that "the specific circumstances of January 6 have passed," *id.* at 1284, the

task is to determine whether the defendant "pose[s] a threat of committing violence in the future,"I*id*.

Defendant Grady had been charged with assault upon law enforcement with a deadly weapon, in violation of 18 U.S.C. §111(a) and (b), by reason of his actions on January 6th in assaulting police officers with a skateboard, entering the Capitol, pushing through doors and blocking police officers from entry into the Capitol, again using the skateboard to do so.  Police officers suffered multiple serious injuries as a result, including a possible concussion.

In the instant case, the government previously contended that Mr. Lazar was generally dangerous because he is charged with assaulting an officer. While this is a serious charge, the charge alone does not constitute a specific threat to society requiring detention.  The above-cited precedents require an individualized determination of dangerous in this case at this time.  Such analysis leads to the conclusion, that absent the special circumstances that existed on January 6th, the defendant poses no danger at all to the community or to law enforcement officers, given his lack of any criminal or violent history, his lifelong demonstration of respect for law enforcement and the availability of release conditions that can be imposed.  His actions on January 6th stand in stark contrast to his demonstrated history of non-violence and law-abiding character.

To continue Mr. Lazar's incarceration would create inconsistencies with other January 6th defendants (in addition to defendant Grady) charged with violations of 18 U.S.C. §111(b), who were accused of arguably greater misconduct, who were granted pretrial release.  For example:

1. *United States v. Aaron James*, 1:21-cr-605.  Defendant James is accused of picking up a police shield and attacking uniformed officers as those officers were being pepper sprayed and subjected to violent physical assault with numerous makeshift weapons including crutches, chair legs, table tops, and a large metal ladder.  He led

the attack on officers in the tunnel.  *See* Motion, *Id*., ECF 62.

2.  *United States v, Sanford*, 1:21-cr-52.  Sanford is accused of hurling a fire extinguisher into a crowd of police officers, striking at least three officers in the head.  *Id., at* ECF 10.

3.  *United States v. David Blair,* 1:21-cr-186.  Blair is accused of hitting law enforcement officers with a lacrosse stick.  *Id,*. ECF1-1.

4.  *United States v. Robert Sanford*, 1-21-cr-86. Defendant Sanford is alleged to have stepped over a wall, drawn a fire extinguisher and hurled it towards a group of police officers, striking three officers.  *Id., ECF 1-1.*

5.  *United States v. Emanuel Jackson*, 1:21-cr-35.  Defendant Jackson is accused of making a clenched fist and repeatedly striking a U.S. Capitol Police officer on his person while attempting to forcefully enter the building.  Later on, on the West Terrace Entrance to the Capitol, defendant Jackson repeatedly struck a group of both U.S. Capitol and Metropolitan Police Department uniformed officers with a baseball bat, while others pummeled officers with police helmets.  *Id.,* ECF 14.

6.  *United States v. Isaac Westbury*, 1:21-cr-605.  Defendant James is accused of picking up a police shield and attacking uniformed officers as those officers were being attacked by others.  *Id.,* ECF 35.

7.  *United States v. David Judd*, 1:21-cr-40.  Defendant Judd is accused of joining a group of rioters in the Lower West Terrace tunnel as they pushed in unison against law enforcement guarding the doors.  He then yelled "shield wall" into the crowd, helping to pass the stolen shields to rioters inside the tunnel, which shields were later used to squash the officers trying to guard the doors.  He then walked into the crowd in the small tunnel, lit a firecracker and threw it at the law enforcement officers trying to hold the rioters from entering the Lower West Terrace doors.  *Id*., ECF 57.

8.  *United States v. Michael Foy*, 1:21-cr-108.  Defendant Foy is accused of travelling to Washington D.C. armed with a hockey stick, which he used to repeatedly strike law enforcement officers in the face, head, neck and body.  He also crawled through and destroyed a window in the  Lower West Terrace of the Capitol and urged others to assist him.  He further participated in the destruction inside the Capitol.  *Id*., ECF 11.

9.  *United States v. Vitali Gossjankowski*, 1:21-cr-123.  Defendant Gossjankowski is accused of possessing a handheld Taser, activating the Taser multiple times, causing light flashes to emanate from the Taser's tip, and pushing himself through the crowd towards the police line that was protecting the entrance to the Capitol.  *Id*., ECF 1-1.

10. *United States v. Frederico Klein*, 1:21-cr-40.  Defendant Klein is accused of using a

shield to forcibly assault two police officers.  *Id.*, ECF 102.

11. *United States v. Thomas Webster*, 1:21-cr-208.  Defendant Webster is accused of using a large metal flagpole in an effort to strike a New York City Police Officer, after berating the officer, yelling, *inter alia*, "You fucking piece of shit.  You fucking Commie motherfuckers… He then repeatedly attacked the officer with the metal flagpole, striking the officer numerous times.  He then broke through the metal barricade, charging and lunging toward the officer with clenched fists and tackled the officer to the ground.  He then tried to rip off the officer's face mask and shield while he was on the ground.  *Id.,*  ECF 1-1.

12. *United States v. Michael Brock*, 1:21-cr-500.  Defendant Brock is accused of repeatedly striking and charging toward two police officers with a four-foot-long metal rod, causing the officers to disperse and impeding them from controlling the mob at or near the Upper West Terrace. *Id.,* ECF 1-1.

13. *United States v Edward McCaughey, III*, 1:21-cr-40.  Defendant McCaughey is accused of being part of a violent mob that entered the Capitol building.  He assisted the group in passing stolen police riot shields back to other rioters in the tunnel.  He then began using a riot shield to push against a police officer while others sprayed something orange from a canister at the officers over the riot shields that McCaughey and others were using to push the officers.  The officer that was being held by McCaughey was shown on video to be crying out in pain as McCaughey pinned the officers body between the stolen riot shield and the lower west terrace door.  While McCaughey continued to pin Officer Hodges between the shield and the door, another rioter ripped off the officer's gas mask, exposing the officer's bloodied mouth.  He then proceeded to attack other officers with the stolen riot shield.  *Id.*, ECF 11.

14. *United States v. Steven Cappuccio*, 1:21-cr-40.  Defendant Cappuccio is accused of using a baton to strike a Metropolitan Police Officer and also forcibly removed a baton from a police officer.

15. *United States v. Stephen Randolph*, 1:21-cr-332.  Defendant Randolph is accused of violently pushing and pulling the police barricades until the violent crowd successfully pushed the barricades down on top of the officers.  In the process, defendant Randolph and others knocked down a police officer as the crowd lifted the barricades up and pushed towards the Capitol, causing the officer's head to hit the stairs, resulting in a loss of consciousness.  Defendant Randolph then continued to assault two other police officers by physically pushing, shoving, grabbing the officers. *Id.*, ECF 6-1.

Here, Mr. Lazar did not physically touch an officer, he did not wield any dangerous object or push, strike, or harm any law enforcement officers.  He did not fight on the front lines,

13



nor participate in the violent attempt to breach the Capitol building.  Instead, he kept his distance, but in a thoughtless reaction to having been pepper sprayed, he wrongfully discharged one spray from a lachrymatory agent from a canister that he had picked up from the floor.  This act, while serious, was significantly less violent than the conduct of the above-mentioned defendants, who intentionally physically and violently attacked law enforcement officers, and who have been granted pretrial release with supervision.

## CONCLUSION

For all of the reasons stated above, the defense respectfully submits that is has shown by clear and convincing evidence that Mr. Lazar does not present an identified and articulable threat to an individual or the community or a risk of flight and that there are pretrial conditions that will satisfy any risk of flight or safety of the community.

Given the facts and circumstances of Mr. Lazar's offense ███████████████████ ████████████████████████████ it is the defense's belief that, having already served one year in prison[5] the decision as to the appropriate sentence of incarceration should be this Court's and this Court's, alone. ████████████████████████

---

[5] Mr. Lazar has been in extremely harsh pretrial conditions in various prisons, including the Federal Detention Center, Philadelphia, Northern Neck Regional Jail, Virginia and FCP Lewisburg, Pennsylvania.  He has been in continual lockdowns due to COVID restrictions, is unable to be outdoors more than one hour per day and has no working ventilation in his cell or cellblock in Lewisburg.  Further, he is unable to participate in any prison programs which would be available to a designated, sentenced prisoner.  These conditions are far more difficult and punitive than would ordinarily exist if Mr. Lazar were a designated, sentenced inmate rather than a pretrial detainee.

████████████████████████████████████████████████

█████████████████████████████    The defense respectfully submits that only this Court,

not the government, should determine the appropriate sentence for Mr. Lazar.  At sentencing, in

the event that this Court determines that an additional period of incarceration is required, that

would be completely within the Court's prerogative and it would then be so ordered.

Respectfully submitted,

HOPE C. LEFEBER, LLC

By:

_____
HOPE C. LEFEBER, ESQUIRE

Hope C. Lefeber, Esquire
PA I.D. No. 31102
Hope C. Lefeber, LLC
Two Penn Center
1500 JFK Boulevard; Suite 1205
Philadelphia, PA   19102
(610) 668-7927

*Counsel for Defendant*

### CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of July 2022, I caused a true and correct copy of the foregoing Motion to be delivered via email to dcd_cmecf_cr@dcd.uscourts.gov with a copy emailed to Assistant United States Attorney Douglas Collyer, DOJ-USAO, Gateway Building, 14 Durkee Street, Room 340, Plattsburgh, NY, 12901, at Collyer, Douglas (USADC) Douglas.Collyer@usdoj.gov

_____/s/_____

Hope C. Lefeber